IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| C-BONS INTERNATIONAL GOLF GROUP, INC. | § § § | |
| Plaintiff, | § § § | |
| | § | Civil Action No.: 3:19-CV-663-B |
| v. | § § § | |
| LEXINGTON INSURANCE CO., WILLIS TOWERS WATSON US, LLC, and WILLIS OF ILLINOIS, INC. | § § § § | |
| Defendants | § | |

**PLAINTIFF'S FIRST AMENDED
COMPLAINT AND JURY DEMAND**

Plaintiff C-BONS INTERNATIONAL GOLF GROUP, INC. ("C-BONS" or "Plaintiff") complains of LEXINGTON INSURANCE CO., WILLIS TOWER WATSON US, LLC, and WILLIS OF ILLINOIS, INC. ("Defendants"), and files this Amended Complaint, and states as follows:

**I. PARTIES**

1. Plaintiff C-BONS is a foreign corporation doing business in Dallas County, Texas.

2. Defendant Lexington Insurance Co. ("Lexington") is Plaintiff's insurance company and is believed to be a foreign corporation doing business in Texas. Upon information and belief it is incorporated under Delaware law and its principal place of business is Boston, Massachusetts. Lexington Insurance Co. has already appeared in this case and is before the Court.

3. Defendant Willis Towers Watson US, LLC ("Willis") is believed to be a foreign limited liability company doing business in Texas. Upon information and belief Willis is a citizen of Delaware, Virginia and New York for diversity jurisdiction purposes (See Willis "Notice of Removal" filed herein).  Willis has already appeared in this case and is before the Court.

4.  Defendant Willis of Illinois, Inc. ("Willis") is a foreign corporation doing business in Texas.  It is incorporated in Illinois and has a principal place of business at 233 S. Wacker Drive, Suite 2000, Chicago, Illinois 60606, and thus is a citizen of Illinois for diversity jurisdiction purpose (See Willis "Notice of Removal").  It will be served by service of this pleading on its attorney or by other Summons under the Federal Rules if its attorney will not accept service.

## II. DIVERSITY JURISDICTION AND VENUE

5.  This Court has jurisdiction over this controversy because there is complete diversity between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332.

6.  Plaintiff is a corporation. When determining the citizenship of the real parties in interest for purposes of diversity jurisdiction, a corporation is considered a citizen of every state where it is incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1).  Thus, Plaintiff is a citizen of Arizona for diversity purposes.

7.  As alleged above Defendants are all citizens of states other than Texas.

8. Plaintiff files this suit seeking full compensation from Lexington for all of its damages which are covered by the insurance policy which is the subject of this lawsuit. Plaintiff also files this suit, in the alternative, seeking damages against Willis for negligence and for misrepresenting to Plaintiff that Plaintiff was fully covered for the type of loss sustained.  To

date, Plaintiff's damages exceed $31,000,000, and Plaintiff seeks recovery from all Defendants jointly and severally for any unpaid amounts. Accordingly, the amount in controversy is in excess of $75,000.

9. Venue is proper in the Northern District of Texas, because this cause of action arises out of a breach of contract action and/or out of torts which were performable in whole or in part and/or which have occurred in whole or in part in the State of Texas.  Furthermore, the injury and damage all occurred in the State of Texas.  Also, this case was initially filed in state court and was removed to this Court from the state court proceeding pending in 134th Judicial District Court of Dallas County, Texas.

### III. FACTS

10. Plaintiff entered into an insurance agreement ("the Policy") with Defendant Lexington to provide coverage for its golf courses in and around the Houston, Texas area.  The effective date for the Policy was April 24, 2016.

11. Defendant Willis acted as broker/agent in obtaining the Policy between Defendant Lexington and Plaintiff.

12. On or about 10:00 P.M. on August 25, 2017, Hurricane Harvey made land fall in and around the city of Houston, Texas.  It was followed by rain, wind, flooding, and storm surges. Plaintiff's many golf courses were damaged as a result. The damaged properties owned by Plaintiff were insured under the Policy Plaintiff had with Lexington at the time of Hurricane Harvey.  Plaintiff made a claim for losses with its insurer, Defendant Lexington. Plaintiff submitted a proof of loss to Lexington on October 23, 2017 for over $25,000,000. Plaintiff also

lost a lease on the Bear Creek Golf Course. The Plaintiff valued the loss of lease at over $6,000,000. Thus, Plaintiff has been damaged over $31,000,000.

13. Storms hovered above the area of Texas where Plaintiff's properties covered by the Policy were located. The storms continuously brought high winds and dropped an estimated 33 trillion gallons of water. This lasted for several days.

14. As a result of Hurricane Harvey and the subsequent storms, Plaintiff suffered both flood and non-flood damage to Plaintiff's property located inside the 100-year flood zone and its property located outside the 100-year flood zone. However, Lexington, after only a brief two-week investigation, concluded that all damage done was caused solely by "flooding". As a result, Lexington paid Plaintiff merely $2,500,000, which Lexington stated was the maximum amount covered for flood damage under the Policy. This "flood only damage" conclusion was incorrect and attained through negligent and bad faith efforts by Lexington. Lexington disregarded Plaintiff's reports, personnel, staff, data, and information in coming to this conclusion.

15. To support its contention that the properties suffered non-flood damage, Plaintiff provided Lexington with a full report regarding additional non-flood damage done to the golf course bunkers, or sand traps. This report was completed by Michael Hurdzan, a well-respected and noted expert in the areas of golf-course design, architecture, construction, and maintenance. In this report, Mr. Hurdzan concluded that the damage to the bunkers on the golf courses was caused by the inundation of over fifty-one (51) inches of rain over a six-day period. The fifty-one (51) inches of rainfall entered the bunkers, was absorbed, and broke down the integrity of the bunkers. This report further supports Plaintiff's assertion that its properties suffered non-flood

damages, rather than exclusively flood damage. Lexington's representation that all damage suffered was due to flooding is a misrepresentation based on its quick two-week investigation and completely contrary to the detailed analysis provided to Lexington.

16. Plaintiff's non-flood damages also included damage done to its buildings due to wind and rain. In addition, Plaintiff's non-flood damages included losing the lease to Bear Creek Golf Course, which was a business interruption. This loss sustained from business interruptions constitutes non-flood damages, further showing that Lexington's contention that all damage was caused by flooding was made in bad faith.

17. Even though Lexington claims that all damage was caused by flood, Lexington paid Plaintiff an additional $242,023 for non-flood damages that Lexington itself called "Wind damages to trees." Under the Policy, wind damage is distinguished as a type of non-flood damage. Therefore, in making this payment to Plaintiff for the tree damage caused by wind, Lexington effectively admitted that Plaintiff indeed suffered non-flood damage, further evidencing that Lexington negligently arrived at its conclusions and that its refusal to cover all of Plaintiff's damages was in bad faith.

18. While Lexington has partially compensated Plaintiff for its damages, Lexington refused to fully compensate Plaintiff for all of its damages which are covered by the Policy. Under the Policy, Plaintiff is entitled to full coverage for damages caused by a "Named Storm" up to $75,000,000 per occurrence.

19. Plaintiff contends, in the alternative, if certain damages are in fact "not covered" by the insurance policy provided by Defendant Lexington, then Defendant Willis misrepresented to Plaintiff that Plaintiff was fully covered for the type of loss sustained.

20. Defendant Willis failed to properly explain the terms and conditions of the Policy, and allowed the appearance of full coverage to exist. Plaintiff relied on Willis and believed that Plaintiff was covered for its potential losses. Willis' actions fell below the standard of care for an insurance agent and its dealings with a client. Willis also failed to advise, explain or disclose the exact extent of coverage and the alleged exclusions from the policy coverage.

21. Defendant Willis also failed to properly understand Plaintiff's operations and insurance needs and/or failed to properly advise and to obtain a policy of coverage to meet those needs. Furthermore, Defendant Willis failed to disclose that some of the terms of the Policy were ambiguous or illusory and/or that Willis believed that certain terms of the Policy were ambiguous or illusory.

22. Additionally, Willis failed to adequately support Plaintiff and its attempts to negotiate a fair settlement of its claims with Lexington.

23. All conditions precedent to Plaintiff's recovery have occurred, been satisfied, and/or waived.

## IV. CAUSE OF ACTION: BREACH OF CONTRACT

The foregoing paragraphs are incorporated by reference for all purposes.

24. Plaintiff brings this suit against the Defendant Lexington for breach of contract and to enforce its obligation to pay Plaintiff's damages in accordance with the Policy. To prevail on its breach of contract claim against Lexington, Plaintiff must show (1) there was a valid contract or policy; (2) Plaintiff performed its obligations under the contract; (3) Defendant breached the contract; and (4) Plaintiff suffered damages as a result of Defendant's breach.

25. Plaintiff's Policy with Lexington became effective on April 24, 2016.  Plaintiff has paid all premiums due under the Policy.

26. Plaintiff has performed all of its duties and conditions precedent by paying all premiums and providing Lexington with a proof of loss claim for over $25,000,000, combined with a claim for a lost lease in the amount more than $6,000,000.

27.  Lexington has failed and refused to compensate Plaintiff as required under the Policy.  By refusing to pay the Plaintiff for the full amount of loss according to the terms of the insurance Policy, Lexington is in breach of the Contract.  To this date, Lexington has only paid Plaintiff just under $3,000,000, which constitutes only partial payment for Plaintiff's damages.  Lexington has refused to pay the just amount due.  As a result of this breach, Plaintiff has suffered damages.

## V. CAUSE OF ACTION: NEGLIGENCE

The foregoing paragraphs are incorporated by reference for all purposes.

28.  As alleged above, Defendant Willis also failed to act in accordance with the standard of care of a reasonably prudent Insurance agent and proximately caused damage to Plaintiff due to its negligence.  Willis failed to exercise reasonable care in its communications and representations to Plaintiff.

29.  Also as alleged above, Defendant Lexington acted negligently and contrary to the standard of care when it in improperly adjusted the claim in bad faith and proximately caused damage to Plaintiff due to its negligence.  Additionally, Lexington did not exercise reasonable care during its investigation of the damage and the causes or in communicating the information of those investigations and findings.

## VI. CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

The foregoing paragraphs are incorporated by reference for all purposes.

30. Plaintiff brings this cause of action, in the alternative, alleging that Defendants Lexington and Willis negligently misrepresented to Plaintiff that Plaintiff was fully covered for the type of loss sustained in the storm at the time Plaintiff purchased the Policy, and thereafter.

31. For a claim of negligent misrepresentation, a plaintiff must show that (1) the representation was made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplied misleading, false, inaccurate or incorrect information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or compliance in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

32. As alleged above, both Lexington and Willis negligently misrepresented information to Plaintiff. As a result, Plaintiff suffered pecuniary loss in the form of its damages to the golf courses and in losing the lease of Bear Creek Golf Course.

33. Under Texas law, an insurance agent can be liable for a claim of negligent misrepresentation. *Ogunro v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:18-CV-1784-B, 2019 U.S. Dist. LEXIS 1559, at *5 (N.D. Tex Jan. 4, 2019); *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F.Supp. 2d 972, 982 (S.D. Tex. 2007).

34. Plaintiff engaged in business with Willis in order to obtain an insurance policy with Lexington. Defendant Willis, acting in its capacity as an insurance agent or broker, misrepresented to Plaintiff the scope of coverage Plaintiff would have in the event of the damage like the type at issue in this case. Plaintiff sought guidance from Willis to obtain an insurance

policy that covered Plaintiff's needs for its golf courses. Willis provided Plaintiff with false information that under its policy with Lexington, it would be fully covered for damages caused by flood and non-flood sources, including named storms, rain, and wind, up to $75,000,000. In the alternative, Willis failed to exercise reasonable care in explaining the information and terms of the Policy.  Plaintiff's understanding and reliance on the Policy's coverage stemmed directly from Willis' representations during the period in which Plaintiff entered into the Policy with Lexington. When Plaintiff entered into the Policy with Lexington, it reasonably believed that its properties were fully covered to the extent stated by Willis.

35.  Plaintiff relied to its detriment on these misrepresentations made by Willis, as evidenced by Plaintiff purchasing the insurance policy from Lexington. But for the representations made by Willis, Plaintiff would not have purchased the Policy from Lexington and/or would have sought a more comprehensive Policy and expanded coverage.  As a result, Plaintiff has suffered a great pecuniary loss.

## VII. CAUSE OF ACTION: VIOLATION OF TEXAS INSURANCE CODE

The foregoing paragraphs are incorporated by reference for all purposes.

36.  Under Chapter 541 of the Texas Insurance Code, a person may not engage in a trade practice that is "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." TEX. INS. CODE. § 541.003. A person is defined as "an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor." TEX. INS. CODE. § 541.002(2).

37. Both Defendant Lexington and Defendant Willis meet the definition of a "person" under § 541.002(2), as Lexington is a corporation in the business of insurance as an insurance provider and Willis is an insurance agent or broker that engaged in the business of insurance. Therefore, both Defendants are subject to liability for violating the Texas Insurance Code.

38. Under the Texas Insurance Code § 541.051, it is an unfair or a deceptive practice to make or caused to be made misrepresentations regarding the terms of the policy or the benefits or advantages promised by the policy. TEX. INS. CODE. § 541.051; *Aspen*, 514 F.Supp. 2d at 983. Insurance agents are also liable for misrepresenting the scope or existence of coverage in violation of the Texas Insurance Code. *Aspen*, 514 F.Supp. 2d at 984.

39. Defendant Lexington violated § 541.051 by making misrepresentations regarding the terms of the Policy and the benefits or advantages promised. Lexington made these misrepresentations when it notified Plaintiff that the maximum amount covered under the Policy was for the $2,500,000 for flood damage already paid. As stated above, this is a misrepresentation of what the Policy actually states, as the Policy includes a maximum $75,000,000 coverage for Named Storm damage per Occurrence and a maximum $5,000,000 coverage for flood damage per Occurrence. Lexington has represented to Plaintiff that certain damages, including non-flood damages, are not covered by the Policy when in fact these damages are indeed covered. This is a violation of § 541.051. Lexington's refusal to pay the amounts under the Policy misrepresents the terms of the Policy.

40. In the alternative, Defendant Willis made misrepresentations of the terms, advantages, and benefits of the Policy when it represented to Plaintiff that the Policy covered Plaintiff up to $75,000,000. Willis represented that the Policy would cover Plaintiff in the event of flood

damage and non-flood damage, including named storm, wind, and rain. Plaintiff sustained these forms of damage as defined specifically in the Policy. Lexington's refusal to pay Plaintiff for these damages, with the excuse that the damages are "not covered", is evidence that the Policy was not what Willis purported it to be and according to Lexington, the Policy did not cover the areas Willis represented were covered. Willis was acting as an insurance agent or broker when it made these misrepresentations, Willis is liable under § 541.051.

41. Under § 541.060 of the Texas Insurance Code, it is an unfair or a deceptive practice to engage in unfair settlement practices with respect to a claim by an insured. This includes "(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; . . . (2)(a) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; . . . (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim." TEX. INS. CODE §541.060.

42. Lexington has also violated § 541.060(2)(a) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim when Lexington's liability is reasonably clear. Lexington has fought Plaintiff every step of the way since Plaintiff submitted its proof of loss claim. With a policy that provides for $75,000,000 worth of coverage per occurrence for Named Storm damage, $5,000,000 per occurrence for flood damage, and other coverage for non-flood damages, Lexington has tried to cap its liability at $2,500,000. This is in no way a fair and equitable settlement of the claim. It is not only reasonably clear that Lexington is liable under this Policy for Plaintiff's damages, but abundantly clear. Lexington is liable for both non-flood and flood damage and Plaintiff suffered both non-flood and flood damage.

However, Lexington contends that all damage was flood damage. Lexington ignores all other information, data, and reports that clearly show that non-flood damage also occurred. By refusing to promptly settle and come to this conclusion, Lexington has failed to negotiate a settlement of the claims with Plaintiff in good faith, which is in violation of § 541.060(2)(a).

43. Lexington also violated § 541.060(7) by refusing to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim. As stated above, Lexington conducted a quick, two-week investigation after Hurricane Harvey to come to its conclusion that all the damage to the numerous golf courses was solely caused by flooding. This investigation was not reasonable. A Named Storm that dropped an estimated 33 trillion gallons of water, caused additional rain for seven straight days, brought forth high winds, and storm surges, reasonably would cause more than simply flood damage. Plaintiff's provided report from a highly regarded golf course expert that damage to the bunkers was from rain water and not flooding. Lexington paid Plaintiff a sum of money to cover damage done to trees from wind, which is a type of non-flood damage as defined in the Policy. Plaintiff also sustained an interruption of business, which by definition under the Policy is a type of non-flood damage. These instances alone illustrate that Lexington failed to conduct a reasonable investigation because the conclusion it came to is not reasonable considering the occurrences and factors involved. Lexington clearly has violated § 541.060(7) of the Texas Insurance Code by failing to conduct a reasonable investigation of Plaintiff's claim.

## VIII. BREACH OF SPECIAL AND/OR FIDUCIARY RELATIONSHIP

The foregoing paragraphs are incorporated by reference for all purposes.

44. Plaintiff and Willis had a special relationship built on trust and confidence. Plaintiff relied on this relationship for guidance and advice. Willis breached the special relationship and its position of trust to the determent of Plaintiff. Willis placed its self-interests above those of Plaintiff.

## IX. DECLARATORY JUDGMENT

The foregoing paragraphs are incorporated by reference for all purposes.

45. Plaintiff seeks a declaratory judgment declaring and interpreting the Policy and its terms and conditions. If any terms are ambiguous Plaintiff seeks declaratory judgment clarifying the terms of the Policy and establishing the rights, benefits, duties, responsibilities and obligations of the parties.

## X. CONDITIONS PRECEDENT

The foregoing paragraphs are incorporated by reference for all purposes.

46. All conditions precedent for Plaintiff's recovery in this case have been performed or have occurred or have been waived. Any other action required under applicable law and the insurance policy agreement have been performed.

## XI. DAMAGES

47. Plaintiff seeks recovery of all damages to which it may be entitled to at law or in equity, jointly and severally against all Defendants, including but not limited to the following: direct, indirect, actual, special, general, consequential, reliance, expectancy, benefit of bargain, lost profits, past and future damages, out of pocket, and other damages of every nature and type which were the result of Defendants' actions in this case, including multiple damges under the Texas Deceptive Trade Practices Act or the Insurance Code.

48. As a result of Defendants' conduct, the damage suffered by Plaintiff includes, but is not limited to damages for (1) physical injury to or the destruction of tangible property including the loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property which has not been physically injured or destroyed, but such loss of use was caused by the negligence and/or an accident of Defendant(s) which occurred in the aforementioned years.

## XII. ATTORNEY'S FEES

Plaintiff repeats and re-alleges all of the foregoing paragraphs as if fully copied and set forth at length herein and further shows as follows:

49. Plaintiff has retained the services of the undersigned licensed attorneys to assist it in the investigation, prosecution and defense of this cause. As such Plaintiff seeks reasonable and necessary attorney's fees from Defendants, jointly and severally, for the investigation, prosecution and litigation of this action through trial of this cause. Further, Plaintiff seeks reasonable and necessary attorney's fees from Defendants, jointly and severally, should this case be appealed to the Court of Appeals. Further, Plaintiffs seek reasonable and necessary attorney's fees from Defendants, jointly and severally, should this case be appealed to the Supreme Court. Further, Plaintiff seeks reasonable and necessary attorney's fees from Defendants should any appeal of this cause be made to appellate courts of all levels. Plaintiff is entitled to attorneys' fees pursuant to: the agreements at issue herein; §38.001 et seq. Texas Civil Practices & Remedies Code; The Texas Deceptive Trade Practices Act; The Declaratory Judgment Act; The Texas Insurance Code; and any other statutory or common law remedy for recovery of attorneys' fees.

## XIII. EXEMPLARY AND PUNITIVE DAMAGES

Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully copied and set forth at length herein and further shows as follows:

50.  Defendants' conduct as heretofore alleged was grossly negligent, intentional, willful, wanton, malicious and/or done recklessly, done with malice, and done with disregard for the rights of Plaintiff.  Plaintiff seeks recovery of punitive and/or exemplary damages, for which Plaintiff seeks judgment from Defendant(s), in the maximum amount allowed by law, and in an amount of money that is within the jurisdictional limits of this Court.

## XIV. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

The foregoing paragraphs are incorporated by reference for all purposes.

51.   Plaintiff seeks recovery of pre-judgment interest in the maximum amount allowed by law and for the maximum time allowed by law.  Plaintiff seeks recovery of post-judgment interest in the maximum amount allowed by law and for the maximum time allowed by law.

## XV. JURY DEMAND

52.  Plaintiff demands trial by jury as to all matters in this case.

## XVI. PRAYER

53. WHEREFORE PREMISES CONSIDERED, Plaintiff C-BONS International Golf Group, Inc. request that Defendants Lexington Insurance Co., Willis Towers Watson US, LLC and Willis of Illinois, Inc. be cited to appear and answer, and that the Court enter judgment awarding Plaintiff damages as alleged herein against all Defendants jointly and severally. Plaintiff seeks pre-judgment interest and post-judgment interest in the maximum amounts allowed by law.   Plaintiff further seeks reasonable and necessary attorney's fees and costs of suit and all other relief, at law and in equity, to which it is entitled.

Respectfully Submitted,

*/s/ Joseph E. Ackels, Sr.*
JOSEPH E. ACKELS, SR.
State Bar No. 00829980
ACKELS & ACKELS, L.L.P.
3030 LBJ Freeway, Suite 1550
Dallas, Texas 75234
Tel: (214) 267-8600
Fax: (214) 267-8605
joe@ackelslaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served on all counsel of record on the 25th day of April, 2019, in accordance with the Federal Rules of Civil Procedure.

*/s/ Joseph E. Ackels, Sr.*
JOSEPH E. ACKELS, SR.