UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| C-BONS INTERNATIONAL GOLF GROUP, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-0663-B |
| LEXINGTON INSURANCE CO., WILLIS TOWERS WATSON U.S. LLC, and WILLIS OF ILLINOIS, INC., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Willis of Illinois, Inc. & Willis Towers Watson U.S. LLC's (collectively "Willis")[1] Motion to Dismiss Plaintiff's Claims for Violation of the Texas Insurance Code, Breach of Fiduciary Duty, and Recovery of Attorneys' Fees (Doc. 17). For the reasons that follow, the Court **DENIES** Defendants' Motion to Dismiss.

## I.

## FACTUAL BACKGROUND

For the purposes of this motion, Plaintiff's allegations are taken as true. Plaintiff C-Bons International Golf Group, Inc. entered into an insurance agreement ("the Policy") with co-Defendant Lexington Insurance Company to provide insurance coverage for its golf courses in and

---

[1]Defendants contend that Willis Towers Watson U.S. LLC is not a proper party to the action. *See* Doc. 18, Br. in Supp. of Def.'s Mot. to Dism. ("Def.'s Br."), 1 n.1. They refer to themselves collectively as "Willis." *See id.* For purposes of convenience, the Court will refer to the Willis Defendants collectively as "Willis." This should not be construed as a conclusion on the merits of Defendants' arguments that Willis LLC is not a proper party; the Court does not decide that issue here.

- 1 -

around Houston, Texas, effective April 24, 2016. Doc. 12, First Am. Compl., ¶ 10. Defendant Willis acted as a broker/agent for C-Bons in obtaining the coverage from Lexington. *Id.* ¶ 11. In late August 2017, C-Bons' properties were damaged by Hurricane Harvey. *Id.* ¶ 12. C-Bons believes that its damaged properties were covered by the Policy, and that it sustained over $31,000,0000 in damage to its properties. *Id.*

Lexington, however, paid C-Bons oly $2,500,000, which Lexington stated was the maximum coverage under the Policy because all of the damage was done by "flooding." *Id.* ¶ 14. C-Bons disputes this characterization and believes that it also sustained non-flood damages that are covered by the Policy. *See id.* ¶¶ 15–17.

Lexington then paid C-Bons an additional $242,023 for wind damage, which Lexington considered to be non-flood damage covered under the Policy. *Id.* at ¶ 17. C-Bons, however, contends that it "is entitled to full coverage for damages caused by a 'Named Storm' up to $75,000,000 per occurrence." *Id.* ¶ 18. As it relates to the Willis Defendants, C-Bons states that if it is not entitled to such coverage, "Defendant Willis misrepresented to Plaintiff that Plaintiff was fully covered for the type of loss sustained." *Id.* ¶ 19; *see also id.* ¶¶ 20–22.

C-Bons believes that in doing so, Willis breached its special and/or fiduciary relationship with C-Bons, *id.* ¶ 44, and violated § 541.051 of the Texas Insurance Code, which makes it unlawful to engage in "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Doc. 12, First Am. Compl., ¶ 36 (citing Tex. Ins. Code § 541.003) (internal quotations omitted). C-Bons is also attempting to recover attorneys' fees in connection with the alleged Texas Insurance Code violation. Doc. 12, First Am. Compl., ¶ 49.

Thereafter, Defendants Willis filed a Motion to Dismiss Plaintiff's Claims for Violation of the

Texas Insurance Code, Breach of Fiduciary Duty, and Recovery of Attorneys' Fees (Doc. 17). Plaintiff filed a Response (Doc. 28) and Defendants filed a Reply (Doc. 36). The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

A.  *The Rule 12(b)(6), Motion-to-Dismiss Standard*

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal citation omitted). Essentially, "the complaint must contain either direct

allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal citation omitted).

## III.

## ANALYSIS

When sitting in diversity, a federal court "must apply the choice of law rules of the forum state, in this case Texas." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In Texas, courts do not undertake a choice-of-law analysis absent "a true conflict of law." *Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 904 n.2 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see also R.R. Mgmt. Co.*, 428 F.3d at 222 ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court [applying Texas law] need not undertake a choice of law analysis.").

When there is a conflict, "Texas law generally gives effect to contractual choice-of-law provisions." *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011). If there is no choice-of-law provision applicable, courts must then use the Second Restatement's "most significant relationship test to decide choice of law issues." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (internal quotation marks omitted). The Restatement requires a court to first look to see if there is "a statutory directive of its own state on choice of law . . . ." *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 414 (E.D. Tex. 1998) (citing Restatement (Second) of Conflicts of Laws § 6 (1971) [hereinafter "Restatement"]. If there is no

statutory directive, courts must then apply the principles of the Restatement (Second) of Conflicts of Laws Section 6, with Section 145(2) providing the specific factors to be applied in tort and tort-like cases. *Benchmark Elec.,* 343 F.3d at 727; *see also Primerica Life Ins. Co. v. Gross*, 2018 WL 2181101, at *7–8 (W.D. Tex. Mar. 27, 2018) (applying Section 145 to common-law duty of bad faith and Texas Insurance Code claims).[2] This analysis must be done "issue-by-issue." *Benchmark Elec.*, 343 F.3d at 727.

A.      *The Applicability of the Choice-of-Law Provision*

Here, the parties contend that there is a choice-of-law provision applicable to the claims at issue. For the reasons that follow, the Court finds that the choice-of-law provision does not apply to either the fiduciary duty or Texas Insurance Code claims.

Willis Towers Watson's agreement for services with C-Bons does contain a choice of law provision, which states:

> Our agreement for services shall be governed by and construed in accordance with the laws of the state in which our office is located.

Doc. 18, Def.'s Br, A-031. Willis explains that its principal place of business—or as Willis refers to it in its briefing, its office—is located in Chicago, Illinois, and therefore the provision requires the application of Illinois law. *Id.* at 4.

Plaintiff C-Bons, however, argues that the choice-of-law provision was part of a proposal, not an agreement, and is therefore unenforceable. Doc. 29, Br. in Supp. of Pl.'s Resp. ("Pl.'s Br."), 5. C-Bons relies on *Coachmen Industries, Inc. v. Willis of Illinois, Inc.*, where a brokerage proposal, without

---

[2]These factors will be discussed in greater detail in III(b), *infra*.

additional evidence of an actual agreement, was found to be unenforceable. Doc. 29, Pl.'s Br., 5 (citing *Coachmen Indus., Inc. v. Willis of Illinois, Inc.*, 565 F. Supp. 2d 755, 767 (S.D. Tex. 2008).

Next, C-Bons contends that the choice-of-law provision, if enforceable, actually supports the application of Texas law. Doc. 29, Pl.'s Resp., 7. C-Bons argues that the word "office" is ambiguous, and can refer to various offices, not just to a company's principal place of business. *Id.* Willis has eight offices in the state of Texas. *Id.* To C-Bons, the more reasonable interpretation of the provision is that "office" refers to one of Willis's eight offices in Texas. *Id.* at 8. Thus, C-Bons argues, the choice-of-law provision must therefore require the application of Texas law, because "[w]hen there exist multiple reasonable interpretations of a contract provision, [Texas] courts construe the contract against the drafter." *Id.* (citing *Keaty v. Freeport Indon., Inc.*, 503 F. 2d 955, 957 (5th Cir. 1974).

In response, Willis argues that because C-Bons signed the proposal, the choice-of-law provision is enforceable. Doc. 36, Def.'s Reply, 2. Additionally, Willis believes the provision is unambiguous as to the application of Illinois law, as their email signatures in their correspondences with C-Bons list Willis's office location as Chicago, Illinois. *Id.* at 3.

Texas law requires a court to read a choice-of-law provision narrowly. In *Stier v. Reading & Bates Corporation*, the choice-of-law provision required that the "agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, U.S.A. . . . ." 992 S.W.2d 423, 433 (Tex. 1999). The Texas Supreme Court found the provision to "appl[y] only to the interpretation and enforcement of the contractual agreement. It d[id] not purport to encompass all disputes between the parties or to encompass tort claims." *Id.*

Federal courts applying Texas choice-of-law rules have read similar provisions narrowly. In *Benchmark Electronics*, the Fifth Circuit interpreted the same operative language as the Court must

do here: "[The] Agreement *shall be governed by, and construed in accordance with*, the internal laws of the State of New York . . . ." 343 F.3d at 726 (internal quotation marks omitted) (emphasis added). The court found that "[t]he provision at hand is narrow because it deals only with the construction and interpretation of the contract." *Id.* For this reason, "[the plaintiff's] claims of fraud and negligent misrepresentation are not governed by the parties' narrow choice of law provision." *Id.*

Here, the Court must interpret the parties' choice-of-law provision in the same way. The Court finds that the provision does not apply to the claims Willis argues should be dismissed.[3] These claims do not involve "the construction and interpretation of the contract." *Id.* Willis is seeking to dismiss only the breach of special and/or fiduciary relationship and Texas Insurance Code claims, as well as the demand for attorneys' fees. *See* Doc. 18, Def.'s Br., 1. Here, the "contractual choice of law clause does not . . . address the parties' entire relationship." *Benchmark Elec.*, 343 F.3d at 726.

Therefore, the Court finds that the choice-of-law provision does not direct this Court to apply either Texas or Illinois law to the claims at issue. Accordingly, the Court must move on to the next step of its choice-of-law analysis.

B.    *The Special and/or Fiduciary Relationship Claim*

The Court must now see if there is a conflict between Illinois and Texas law as it relates to the fiduciary relationship between an insurance broker and an insured party. *See R.R. Mgmt.*, 428 F.3d at 222.

"Texas recognizes both formal fiduciary relationships and informal ones arising from a 'moral, social, domestic or purely personal relationship of trust and confidence, generally [associated with]

---

[3] Because the choice-of-law provision here does not cover the claims at issue, the Court need not determine whether the provision is enforceable or ambiguous.

a confidential relationship.'" *CIC Prop. Owners v. Marsh USA, Inc.*, 460 F.3d 670, 672 n.1 (5th Cir. 2006) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)) (alterations added). Therefore, under Texas law, a claim for a breach of a special and/or fiduciary relationship may be plausible here.

In Illinois, the general duty of care of insurance producers is governed by the Illinois Insurance Placement Liability Act (IIPLA), 735 ILCS 5/2–2201. A general duty of care is established in 5/2–2201. The parties, however, dispute whether the statute limits the claims for a breach of a fiduciary duty owed by an insurance broker. *See* Doc. 18, Def.'s Br., 7; Doc. 29, Pl.'s Br., 20–21. In relevant part, the Illinois Insurance Placement Liability Act states that:

> No cause of action brought by any person or entity against any insurance producer . . . shall subject the insurance producer . . . to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer . . . of any money that was received as premiums, as a premium deposit, or as payment of a claim.

735 ILCS 5/2–2201(b). C-Bons believes that an "insurance producer" does not include an insurance "broker," and therefore Willis does not fall under the IIPLA. *See* Doc. 29, Pl.'s Br., 20 (citing *Harris v. Ill. Vehicle Premium Fin. Co.*, 2000 WL 1307513, at *12 (N.D. Ill. Sept. 7, 2000)).

However, whatever the accuracy of *Harris* was at the time, that case is not applicable after *Skaperdas v. Country Casualty Insurance Company*. 28 N.E.3d 747 (Ill. 2015). There, the Illinois Supreme Court, in deciding whether an insurance agent is an "insurance producer" under the IILPA, acknowledged that Illinois courts consider insurance brokers as "insurance producer[s]." *See id.* at 753 ("While our appellate court has used the terms 'broker' and 'producer' interchangeably and has held section 2–2201 imposes a statutory duty on insurance brokers . . . we have not found any

express holding that insurance agents cannot also be included within the term 'insurance producer.'"). Therefore, under Illinois law, an insurance broker is an insurance producer. Accordingly, an insurance broker can only be sued for wrongful retention or misappropriation. *See* 735 ILCS 5/2–2201(b). There are no such claims in C-Bons' First Amended Complaint against Willis.

Based on its own research and the parties' briefing, this Court has found no similar limit on insurance-broker liability under Texas law. There is thus an apparent conflict between Texas and Illinois law on the liability of insurance brokers for a breach of a fiduciary duty. Therefore, the Court must apply the Restatement to decide which state's law applies.

The parties do not contend that there is a Texas statutory directive on which state's law must apply to the fiduciary-duty claim. The Court must then apply the "most significant relationship" test of the Restatement. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984); Restatement §§ 6, 145.[4] And more specifically, when conducting a choice-of-law analysis regarding a tort or tort like claim, Texas courts look to § 145 of the Restatement. *See Primerica Life Ins. Co.*, 2018 WL 2181101, at *7–8 (applying Section 145 to extra-contractual claims such as common law bad faith). The Section 145(2) factors are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of the business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement § 145(2). Section 145 further provides that these

---

[4]The Restatement provides the following general considerations to guide a court's choice of law determination: "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) the certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied." Restatement § 6(2).

factors are to be considered "according to their relative importance with respect to the particular issue." *Id.*

Willis contends that under this choice-of-law analysis, Illinois law applies to the claim, as "'[t]here is persuasive authority to apply the law of the state where the insurance agent[/broker] is located when the agent[/broker] has acted to the detriment either of the insured or the insurer." Doc. 18, Def.'s Br., 4 (quoting *Coachmen Indus. Inc. v. Willis of Illinois, Inc.*, 2008 WL 1912861, at *6 (S.D. Tex. Apr. 28, 2008) (emphasis in brief)). Because C-Bons alleges that Willis made certain misrepresentations during the insurance placement process, and Willis was acting, at the time, in Illinois—its principal place of business—Illinois law must apply. Doc. 18, Def.'s Br., 5.

C-Bons, on the other hand, does not believe the choice-of-law analysis ends there. C-Bons contends that the "most significant relationship" test requires a consideration of all factors, with the location of the insurance broker being only one. *See* Doc. 29, Pl.'s Br., 11–12.

To support its simplified choice-of-law analysis, Willis relies on several cases, namely, *Coachmen*. In that case, the court had to decide whether to apply Texas, Indiana, or Illinois law to a breach-of-contract dispute between an insured and an insurance broker. *See Coachmen Indus., Inc.*, 2008 WL 1912861 at *1, 5–6. Although the court there did state "[t]here is persuasive authority to apply the law of the state where the insurance agent[/broker] is located when the agent[/broker] has acted to the detriment either of the insured or the insurer," *id.* at *6 (alterations in original), the court first applied the Restatement to determine that Texas had no significant relationship to the claim. *Id.* at *5.[3] In fact, even when the court noted the general "agent/broker" rule relied upon by

---

[3]In *Coachmen*, the court used Section 196 of the Restatement (Second) of Conflict of Laws, as the issue there was a breach-of-contract claim. *See id.* at *4–5. However, the case demonstrates that where the insurance broker is located is *not* a dispositive factor in Texas choice-of-law analysis.

Willis here, it analyzed other relevant Restatement factors. *See id.* at *7 ("However, more important than the place of contracting and negotiation is the place of performance, which is also the key factor under Section 196 of the Restatement."). Thus, *Coachmen* does not support Willis' argument.

Willis also relies on *Hull & Co., Inc. v. Chandler*, 889 S.W.2d 513 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The court there explained how "the applicable law is that of the state where the insurance agent was located when the agent acted to the detriment of the insured or the insurer." *Id.* at 518 n.3. Yet, like in *Coachmen*, the court also found that Texas did not have a significant relationship to the case. *See id.* at 518 ("No Texas defendant, injured party, or property is involved. The insured . . . is a Florida resident seeking damages . . . .").

Therefore, even the cases upon which Willis relies analyzed all the relevant Restatement factors, and not just the location of the insurance broker. The Court here must analyze all of the Restatement factors, with Willis's location being an important, but non-dispositive, factor.

C-Bons argues that the balance of the Section 145(2) factors supports the application of Texas law. C-Bons notes that the injury occurred in Texas (factor (a))—Plaintiff's golf courses and business opportunities were damaged in Texas, and the insurance policy that Willis brokered was supposed to cover such damage in Texas. Doc. 29, Pl.'s Br., 12. Next, C-Bons states, even if some of the misrepresentations occurred in Illinois, they were received and relied upon in Texas by C-Bons. *Id.* Looking to factors (a) and (b) (place of the injurious conduct and the location of the parties, respectively), C-Bons explains that it spent its time trying to find insurance in Texas; Willis was in constant contact with C-Bons while in Texas; and Willis has at least eight different offices in Texas. *Id.* at 12. Finally, as to factor (d), the place where the relationship of the parties is centered, "Plaintiff's business in Texas was the subject of the relationship with Defendants." *Id.* at 13. For

example, Willis visited C-Bons sites in Texas while procuring insurance for C-Bons. *Id.* Therefore, according to C-Bons, the four factors favor applying Texas law. *Id.* at 15.

The Court concludes that, at the motion-to-dismiss stage, it has insufficient information to determine which state has the most significant relationship to the breach of fiduciary and/or special relationship claim. The parties dispute many of the facts that are relevant to applying the Restatement factors. However, these arguments either (1) contain evidence or factual assertions that are inappropriate for the Court to consider at the motion-to-dismiss stage, or (2) leave the Court with insufficient information to determine the outcome of Restatement 145(2) factors (a), (b), and (d). For example, the First Amended Complaint does not mention the location of Willis's offices in Texas or whether the parties met and visited properties in Texas. Yet, C-Bons relies on such facts in its briefing. *See* Doc. 29, Pl.'s Br., 13. Additionally, Willis states that the insurance placement process involved actions taken only in Illinois, s*ee* Doc. 18, Def.'s Br., 5, and provides documentation that apparently shows that its e-mail correspondences with C-Bons noted its office location as Chicago, Illinois. *See* Doc. 38, App. to Mot. To Dism., Ex. 1 & 2. Yet, the Court does not have sufficient detail, as to the placement process or the parties' communications with each other, at this time to reach its conclusion on the choice of law.

Therefore, the Court has insufficient evidence to apply the choice-of -law factors to the breach of fiduciary and/or special relationship claim. As a result, the Court cannot yet apply the applicable fiduciary duty law to the facts of the case. Accordingly, the Motion to Dismiss the fiduciary and/or special relationship claim is denied, without prejudice.

C.  *The Texas Insurance Code Claim and Demand for Attorneys' Fees*

Next, C-BONS alleges that Willis violated the Texas Insurance Code. Doc. 12, First Am. Compl., ¶ 36. Willis, however, states that because Illinois law applies to the case, there is no valid Texas Insurance Code claim, and therefore no claim for attorneys' fees. Doc. 18, Def.'s Br., 5–6.

The parties do not contend that the Texas Insurance Code contains any statutory directive on choice of law. Thus, the "most significant relationship" test applies. And, as discussed above, the Court is not prepared at this stage of the litigation to complete its choice-of-law analysis.

Therefore, the Motion to Dismiss the Texas Insurance Code claim, and the claim for attorneys' fees, is denied, without prejudice.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss (Doc. 17). The Court believes that the conflict-of-law issue would be better addressed in the context of a more developed record and summary judgment motion. The Court notes that the parties disagree on whether there should be a specific discovery schedule for the choice-of-law issue. *See* Doc. 39, Joint Status Report, 3–4. All affirmative relief on this matter should be filed in accordance with Local Rule 7.1.

SO ORDERED.

SIGNED: October 22, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE