**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **C-BONS INTERNATIONAL GOLF** | § | |
| **GROUP, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:19-cv-00663-B** |
| **v.** | § | |
| | § | |
| **LEXINGTON INSURANCE CO.,** | § | |
| **and WILLIS TOWERS WATSON** | § | |
| **US LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT LEXINGTON INSURANCE COMPANY'S ORIGINAL ANSWER AND
DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND
FOR A JURY TRIAL**

Defendant Lexington Insurance Company ("Defendant Lexington") files its Original

Answer and Defenses to Plaintiff C-Bons International Golf Group, Inc.'s Second Amended

Complaint ("Second Amended Complaint") and would respectfully show the Court as follows:

**ORIGINAL ANSWER**

**I. PARTIES**

1.      Defendant denies knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph "1" of Plaintiff's Second Amended Complaint.

2.      Defendant Lexington states that it is a Delaware Corporation with its principal place

of business in Massachusetts.  Defendant Lexington further states that it is an eligible surplus lines

insurer in the State of Texas.  Defendant Lexington admits that it has already appeared in this case

and is before the Court. Defendant Lexington denies the remaining allegations in Paragraph "2"

of Plaintiff's Second Amended Complaint.

3.      Defendant Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "3" of Plaintiff's Second Amended Complaint.

4.      Defendant Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "4" of Plaintiff's Second Amended Complaint.

4a.     Paragraph 4a of Plaintiff's Second Amended Complaint contains no allegations against Lexington and, as such, no responsive pleading is necessary. To the extent the Court deems a response necessary, Defendant Lexington admits the allegations contained in Paragraph "4" of Plaintiff's Second Amended Complaint.

## II.  DIVERSITY JURISDICTION AND VENUE

5.      Defendant Lexington admits this Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332 because the amount in controversy exceeds the jurisdictional limits of this Court and complete diversity of citizenship exists between Plaintiff and Defendants.

6.      Paragraph "6" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is necessary.  To the extent the Court deems a response necessary, Defendant admits this Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332 because the amount in controversy exceeds the jurisdictional limits of this Court and complete diversity of citizenship exists between Plaintiff and Defendants.

7.      Defendant Lexington admits the allegations contained in Paragraph "7" of Plaintiff's Second Amended Complaint.

8.      Paragraph "8" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is necessary.  To the extent this Court deems

6430070.1

a response necessary, Defendant Lexington denies the allegations contained in Paragraph "8" of Plaintiff's Second Amended Complaint, except admits that the amount in controversy exceeds $75,000.

9.      Defendant Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "9" of Plaintiff's Second Amended Complaint.

## III. FACTS

10.      Defendant Lexington admits that Plaintiff is an insured under Policy Number 025030808, effective April 24, 2016 through April 24, 2017, issued by Lexington Insurance Company, which was renewed via Endorsement #011 for the policy period April 24, 2017 through April 24, 2018 on the same terms and conditions as the expiring policy ("Policy").  Defendant Lexington respectfully refers the Court to the Policy itself for its complete terms, conditions, limitations and exclusions.

11.      Defendant Lexington denies each and every allegation contained in Paragraph "11" of Plaintiff's Second Amended Complaint.

12.      Defendant Lexington admits that Hurricane Harvey made landfall in and around the city of Houston, Texas, that certain of Plaintiff's golf courses sustained damage, and that certain of Plaintiff's properties were insured under the Policy at the time of Hurricane Harvey. Defendant Lexington also admits that Plaintiff made a claim for losses with Defendant Lexington and that it submitted a Proof of Loss to Defendant Lexington on or about October 23, 2017, and respectfully refers the Court to the Proof of Loss as it speaks for itself.  Defendant Lexington denies the remainder of the allegations contained in Paragraph "12" of Plaintiff's Second Amended Complaint.

6430070.1

13.     Defendant Lexington denies each and every allegation contained in Paragraph "13" of Plaintiff's Second Amended Complaint.

14.     Defendant Lexington denies each and every allegation contained in Paragraph "14" of Plaintiff's Second Amended Complaint, except admits that Lexington made a full Flood sublimit payment of the $2,500,000 to Plaintiff, the Policy Flood Sublimit.

14a.    Defendant Lexington denies each and every allegation contained in Paragraph "14a" of Plaintiff's Second Amended Complaint. Defendant Lexington further refers the Court to the Policy itself for its complete terms, conditions, limitations and exclusions.

14b.    Defendant Lexington denies each and every allegation contained in Paragraph "14b" of Plaintiff's Second Amended Complaint.

15.     Defendant Lexington denies each and every allegation contained in Paragraph "15" of Plaintiff's Second Amended Complaint.  The report prepared by Michael Hurdzan ("Hurdzan Report") referenced in Paragraph "15" of Plaintiff's Second Amended Complaint was produced on February 28, 2018 as a privileged settlement communication and not as part of the adjustment of Plaintiff's claim.  Defendant Lexington repeatedly requested Plaintiff to lift the settlement privilege, but Plaintiff refused to do so.  As such, up until Plaintiff filed its Amended Complaint on April 25, 2019, the Hurdzan Report remained subject to a settlement privilege and could not be used by Defendant Lexington outside of settlement discussions.

16.     Defendant Lexington denies each and every allegation contained in Paragraph "16" of Plaintiff's Second Amended Complaint.

16a.    Defendant Lexington denies each and every allegation contained in Paragraph "16a" of Plaintiff's Second Amended Complaint.

6430070.1

17.     Defendant Lexington denies each and every allegation contained in Paragraph "17" of Plaintiff's Second Amended Complaint as alleged, except admits that Lexington made a payment of $242,023 to Plaintiff for non-flood damages.

18.     Defendant Lexington denies each and every allegation contained in Paragraph "18" of Plaintiff's Second Amended Complaint.

19.     Paragraph "19" of Plaintiff's Second Amended Complaint contains no allegations against Defendant Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Defendant Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "19" of Plaintiff's Second Amended Complaint.

19a.    Paragraph "19a" of Plaintiff's Second Amended Complaint contains no allegations against Defendant Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Defendant Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "19a" of Plaintiff's Second Amended Complaint, except Defendant Lexington admits that it paid Willis a commission with regard to the Policy.

20.     Paragraph "20" contains no allegations against Defendant Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Defendant Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "20" of Plaintiff's Second Amended Complaint.

21.     Paragraph "21" contains no allegations against Defendant Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Defendant

6430070.1

Lexington denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "21" of Plaintiff's Second Amended Complaint.

22.    Defendant Lexington denies each and every allegation contained in Paragraph "22" of Plaintiff's Second Amended Complaint.

23.    Defendant Lexington denies each and every allegation contained in Paragraph "23" of Plaintiff's Second Amended Complaint.

### IV. CAUSE OF ACTION: BREACH OF CONTRACT

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "23" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

24.    Paragraph "24" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is required.  To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "24" of Plaintiff's Second Amended Complaint.

25.    Defendant Lexington denies the allegations contained in Paragraph "25" of Plaintiff's Second Amended Complaint, as alleged, except admits that the Policy covered some of the claims at issue in this case, subject to the terms, conditions, limitations, exclusions, limits, sublimits and deductibles of the Policy, and that Plaintiff paid premiums due under the Policy.

26.    Defendant Lexington denies each and every allegation contained in Paragraph "26" of Plaintiff's Second Amended Complaint, except admits that Plaintiff provided Lexington with a Proof of Loss and refers the Court to the Proof of Loss itself for its complete content.

27.    Defendant Lexington denies each and every allegation contained in Paragraph "27" of Plaintiff's Second Amended Complaint, except admits that Defendant Lexington paid Plaintiff

6430070.1

$2,500,000, the Policy Flood sublimit for its Flood damages, and $242,023 for wind damages as a result of Hurricane Harvey.

## V. CAUSE OF ACTION: NEGLIGENCE

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "27" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

28.    This paragraph contains no allegations against Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "28" of Plaintiff's Second Amended Complaint.

29.    Defendant Lexington denies each and every allegation contained in Paragraph "29" of Plaintiff's Second Amended Complaint.

## VI. CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "29" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

30.    Defendant Lexington denies each and every allegation contained in Paragraph "30" of Plaintiff's Second Amended Complaint.

31.    Paragraph "31" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is required.  To the extent the Court deems a response necessary, Defendant Lexington denies each and every allegation contained in Paragraph "31" of Plaintiff's Second Amended Complaint.

6430070.1

32.     Defendant Lexington denies each and every allegation contained in Paragraph "32" of Plaintiff's Second Amended Complaint.

33.     Paragraph "33" of Plaintiff's Second Amended Complaint states legal arguments and conclusions and no allegations against Defendant Lexington as to which no responsive pleading is required.  To the extent the Court deems a response necessary, Defendant Lexington denies each and every allegation contained in Paragraph "33" of Plaintiff's Second Amended Complaint.

34.     This paragraph contains no allegations against Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "34" of Plaintiff's Second Amended Complaint.

35.     Defendant Lexington denies each and every allegation contained in Paragraph "35" of Plaintiff's Second Amended Complaint.

35a.    Defendant Lexington denies each and every allegation contained in Paragraph "35a" of Plaintiff's Second Amended Complaint.

## VII. CAUSE OF ACTION: VIOLATION OF TEXAS INSURANCE CODE

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "35a" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

36.     Paragraph "36" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is required.  To the extent the Court deems a response necessary, Defendant Lexington denies each and every allegation contained in Paragraph "36" of Plaintiff's Second Amended Complaint.

8

37.     Defendant Lexington denies each and every allegation contained in Paragraph "37" of Plaintiff's Second Amended Complaint.

38.     Paragraph "38" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is required.  To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "38" of Plaintiff's Second Amended Complaint.

39.     Defendant Lexington denies each and every allegation contained in Paragraph "39" of Plaintiff's Second Amended Complaint.

40.     Defendant Lexington denies each and every allegation contained in Paragraph "40" of Plaintiff's Second Amended Complaint.

41.     Paragraph "41" of Plaintiff's Second Amended Complaint states legal arguments and conclusions as to which no responsive pleading is required.  To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "41" of Plaintiff's Second Amended Complaint.

42.     Defendant Lexington denies each and every allegation contained in Paragraph "42" of Plaintiff's Second Amended Complaint.

43.     Defendant Lexington denies each and every allegation contained in Paragraph "43" of Plaintiff's Second Amended Complaint.

### VIII. BREACH OF SPECIAL AND/OR FIDUCIARY RELATIONSHIP

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "43" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

6430070.1

44.     This paragraph contains no allegations against Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "44" of Plaintiff's Second Amended Complaint.

## IX. AMBIGUITY

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "44" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

45.     Defendant Lexington denies each and every allegation contained in Paragraph "45" of Plaintiff's Second Amended Complaint.

## X. DECLARATORY JUDGMENT

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "45" of Plaintiff's Second Amended Compliant, inclusive, as if set forth more fully at length herein.

46.     This paragraph contains no allegations against Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "46" of Plaintiff's Second Amended Complaint.

## XI. CONDITIONS PRECEDENT

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "46" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

10

6430070.1

47.     Defendant Lexington denies that Plaintiff has satisfied all conditions precedent to the recovery it now seeks.  Defendant Lexington specifically denies that Plaintiff has satisfied the Policy conditions.  Defendant Lexington further denies that it received written notice of Plaintiff's claims that complies with the requirements of Section 541.154 and 542A.003 of the Texas Insurance Code.  Lexington also denies that Plaintiff has properly presented its claim for attorneys' fees under § 38.001 of the Texas Civil Practice Code and Remedies Code or Chapter 542A of the Texas Insurance Code.

## XII. DAMAGES

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "47" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

48     Defendant Lexington denies each and every allegation contained in Paragraph "47" of Plaintiff's Second Amended Complaint.

49.     Defendant Lexington denies each and every allegation contained in Paragraph "48" of Plaintiff's Second Amended Complaint.

50.     This paragraph contains no allegations against Lexington and as such, no responsive pleading is required. To the extent the Court deems a response necessary, Lexington denies each and every allegation contained in Paragraph "50" of Plaintiff's Second Amended Complaint.

51.     Defendant Lexington denies each and every allegation contained in Paragraph "51" of Plaintiff's Second Amended Complaint.

6430070.1

## XIII. ATTORNEY'S FEES/SPECIAL DENIAL

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "51" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

52      Lexington denies each and every allegation contained in Paragraph "52" of Plaintiff's Second Amended Complaint.  Lexington specifically denies that Plaintiff has properly presented its claim for attorneys' fees under § 38.001 of the Texas Civil Practice Code and Remedies Code or Chapter 542A of the Texas Insurance Code.   Plaintiff's claim for attorney's fees is specifically barred under Sections 542A.003(b)(2) and 542A.007(d) of the Texas Insurance Code.  Plaintiff is thus barred from any recovery on such claims.

## XIV. EXEMPLARY AND PUNITIVE DAMAGES

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "52" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

53.      Defendant Lexington denies each and every allegation contained in Paragraph "53" of Plaintiff's Second Amended Complaint.

## XV. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Defendant Lexington repeats, reiterates and re-alleges its responses to Paragraphs numbered "1" through and including "53" of Plaintiff's Second Amended Complaint, inclusive, as if set forth more fully at length herein.

54.      Defendant Lexington denies each and every allegation contained in Paragraph "54" of Plaintiff's Second Amended Complaint.

6430070.1

## XVI. JURY DEMAND

55.     Defendant Lexington admits Plaintiff has demanded a jury trial.

## XVII. PLAINTIFF'S PRAYER

56.     Defendant Lexington denies each and every allegation contained in Paragraph "56" of Plaintiff's Second Amended Complaint.

## XVIII. DEFENSES

## DEFENSES

## FIRST DEFENSE

57.     Defendant Lexington's liability, if any, is derived solely from the policy of insurance issued by Lexington.  Plaintiff's claims are subject to all of the terms, conditions, limitations, exclusions, limits, sublimits and deductibles of the Lexington Policy, which are pled as if copied herein.

## SECOND DEFENSE

58.     The Maximum Amount Payable Amendment Endorsement to the Policy provides in relevant part:

### MAXIMUM AMOUNT PAYABLE AMENDMENT

This endorsement modifies insurance provided by this Policy:

Paragraph F. of SECTION I – COVERAGES AND LIMITS OF LIABILITY is deleted in its entirety and replaced with the following:

F.   MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s), or

2.  The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

\*\*\*

59.     The amount recoverable by Plaintiff is limited by the applicable limits and any sublimits contained in the Policy.  As set forth below, Defendant Lexington has paid Plaintiff the maximum amount of the Flood sublimit and no further amounts are owed.

### THIRD DEFENSE

60.     The Policy defines Flood as:

J.   Flood means, whether natural or manmade, **Flood** waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a **Flood**.

\*\*\*

61.     The Policy states in relevant part:

E.   SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are subject to and not in addition to the **Policy Limit** shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence** unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.**

\*\*\*

2.     **Flood**:

a.     $ 2,500,000 Annual Aggregate

b.     $ 2,500,000 Subject to the Annual Aggregate Limit for all **Flood** shown in Subparagraph E.2.a. above, the Annual Aggregate as respects **Flood** for **Locations** wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

\*\*\*

3.     Named Storm:

$ 75,000,000 Regardless of the number of Coverages, **Locations** or Perils involved including, but not limited to, all **Flood** (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain, the maximum amount the Company will pay per **Occurrence** as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression). In the event covered Loss or Damage by **Flood** arises out of a Named Storm, the maximum amount the Company will pay per **Occurrence** for all such Loss or Damage by **Flood** shall be the Sublimits of Liability for **Flood** as shown in Subparagraphs E.2.a. and E.2.b. above. However, if **Flood** is not covered, the maximum amount the Company will pay per **Occurrence** for all such Loss or Damage by Named Storm shall exclude Loss or Damage by **Flood**.

***

62.    Plaintiff's damages were caused by Flood as defined by the Policy.  Lexington has paid Plaintiff the full $2,500,000 Flood sublimit and has no further liability under the Policy for Flood damages.

### FOURTH DEFENSE

63.    The Policy is endorsed in relevant part as follows:

**ENDORSEMENT #007**
**GENERAL CHANGE ENDORSEMENT TO LEXINGTON**
**MANUSCRIPT DOMESTIC PROPERTY POLICY FORM PR8371**
**(Ed. 02/12)**

**NOTE: Terms that are bolded in this General Change Endorsement are defined in the Policy or this Endorsement.**

This endorsement modifies insurance provided by the Policy as follows:

Regardless of the number of Coverages, **Locations** or Perils involved including, but not limited to, all **Flood** (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain, the maximum amount the Company will pay per **Occurrence** as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression) is the amount stated in C.3.a.-e. above, whichever is applicable.  In the event covered Loss or Damage by **Flood** arises out of a Named Storm, the maximum amount the Company will pay per **Occurrence** for all such Loss or Damage by **Flood** shall be the Sublimits of Liability for **Flood** as shown in Section I, Subparagraphs E.2.a.

15

and E.2.b.  However, if **Flood** is not covered, the maximum amount the Company will pay per **Occurrence** for all such Loss or Damage by Named Storm shall exclude Loss or Damage by **Flood.**

\*\*\*

64.     Plaintiff's damages, including but not limited to its purported time element losses, were caused by Flood as defined by the Policy.  Lexington has paid Plaintiff the full $2,500,000 Flood sublimit and has no further liability under the Policy for Flood damages.

## FIFTH DEFENSE

65.     The General Change Endorsement to the Policy further provides:

> 2.     **FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST**
>
> The following is added to SECTION VI – ADDITIONAL COVERAGES:
>
> FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST
>
> The Company will pay for any loss or damage in the form of, caused by, contributed to or resulting from **fungus, mold(s), mildew or yeast**, or any spores or toxins created or produced by or emanating from such **fungus, mold(s), mildew or yeast** which the Insured establishes is a direct result of a Covered Loss not otherwise excluded by the Policy, provided that such **fungus, mold(s), mildew or yeast** loss or damage is reported to the Company within 180 days from the date of such Covered Loss.
>
> The Company's total liability with respect to this coverage for any one **Occurrence** and Annual Aggregate will not exceed the Sublimit of Liability of $50,000.

\*\*\*

66.     SECTION VI – ADDITIONAL COVERAGES of the Policy provides in relevant part:

> The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I.  These sublimits are part of, and not in addition to sublimits and limits of liability

16

of this Policy, including, but not limited to, the **Earth Movement, Flood,** or Named Storm Sublimits of Liability provided herein, if applicable.

\*\*\*

67.     To the extent Plaintiff is making a claim for loss or damage in the form of, caused by or contributed to or resulting from fungus, mold, mildew or yeast that is not a direct result of a Covered Loss, its claim is barred.  To the extent Plaintiff is making a claim for loss or damage in the form of, caused by or contributed to or resulting from fungus, mold, mildew or yeast that is a direct result of a Covered Loss and failed to report it within 180 days, its claim is barred.

68.     To the extent Plaintiff is making a claim for loss or damage in the form of, caused by or contributed to or resulting from fungus, mold, mildew or yeast, such loss or damage was directly caused by Flood.  Defendant Lexington's liability with respect to this coverage, if any, is limited to the Policy's sublimit of liability of $50,000, which is a part of, and not in addition to the sublimits and limits of liability of the Policy, including but not limited to the Flood sublimit. Lexington has paid Plaintiff the entire Flood sublimit and has no further liability under the Policy.

69.     Alternatively, to the extent that the claimed damage under this coverage was not caused by Flood, the maximum amount recoverable is $50,000, and is subject to the applicable deductibles.

### SIXTH DEFENSE

70.     The General Change Endorsement to the Policy further provides:

3.     OUTDOOR PROPERTY

The following is added to SECTION VI – ADDITIONAL COVERAGES:

OUTDOOR PROPERTY

17

6430070.1

**Outdoor Property** means lawns (including fairways, greens and tees), trees, shrubs, plants, walks, roadways, patios or other paved surfaces.

The Company's total liability with respect to this coverage for any one **Occurrence** will not exceed the Sublimit of Liability of:

$1,000,000    Per Occurrence per course Tees and Greens

$250,000    Per Occurrence Dams, Dikes and Retaining walls, bridges, piers, wharves, docks, roadways, walks, other paved surfaces

\*\*\*

71.    As set forth above, coverage under the Additional Coverages section of the Policy is subject to the terms and conditions of the Policy, including the deductibles and sublimits of liability of the Policy, including but not limited to the Flood sublimit.  Plaintiff's damages were caused by Flood.  Lexington has paid Plaintiff the entire Flood sublimit and has no further liability under the Policy.  To the extent that Plaintiff's damages were not caused by flood, the amount recoverable by Plaintiff for its claim is limited to $1,000,000 per Occurrence per course for Tees and Greens and $250,000 Per Occurrence for Dams, Dikes and Retaining walls, bridges, piers, wharves, docks, roadways, walks, and other paved surfaces, subject to the applicable deductibles.

## SEVENTH DEFENSE

72.    Plaintiff's claim is subject to the deductible application for the applicable deductibles in provision G. DEDUCTIBLE of SECTION I – COVERAGES AND LIMITS OF LIABILITY section of the Policy.

## EIGHTH DEFENSE

73.    The Lexington Policy provides, in part:

P.    **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes

18

all resultant or concomitant insured losses.  The **occurrence** must occur during the policy period.

If more than one event for **Windstorm, Hail,** Named Storm, **Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood** or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed a single **Occurrence**.  When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

74.     Plaintiff has failed to claim more than one occurrence under the Policy.  To the extent that Plaintiff is claiming an additional Flood occurrence, Lexington has paid the $2,500,000 annual aggregate Flood sublimit and has no further liability under the Policy.

### NINTH DEFENSE

75.     The Policy provides in relevant part:

### SECTION VI – ADDITIONAL COVERAGES

 The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I.  These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the **Earth Movement, Flood,** or Named Storm Sublimits of Liability provided herein, if applicable.

\*\*\*

I.     LEASEHOLD INTEREST: If Insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover **The Interest of the Insured as Lessee** or **The Interest of the Insured as Lessor**, whichever is applicable, but only for the first three months succeeding the date of the loss and the **Net Lease Interest** shall be paid for the remaining months of the unexpired lease.

\*\*\*

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

76.     Plaintiff's claim for leasehold interest, if any, is limited as indicated in this provision.

77.     Further, to the extent Plaintiff is making a claim for leasehold interest, its claimed cancellation of lease was caused by Flood and is limited to the applicable $100,000 leasehold interest sublimit of liability, which is a part of, and not in addition to the sublimits and limits of liability of the Policy, including but not limited to the Flood sublimit. Lexington has paid Plaintiff the entire Flood sublimit and has no further liability under the Policy.

78.     Alternatively, to the extent that the claimed damage under this coverage was not caused by Flood, the maximum amount recoverable is $100,000, and is subject to the applicable deductibles.

**TENTH DEFENSE**

79.     Plaintiff's claims are barred, in whole or in part, to the extent any damage was not caused by or resulting from a covered cause of loss.

**ELEVENTH DEFENSE**

80.     The Policy states in relevant part:

V. **Windstorm** or **Hail**: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or

20

hail damage to its roof or walls through which the rain, snow, sand or dust enters;

3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

81.     Plaintiff's claims are barred, in whole or in part, for loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain enters.

## TWELFTH DEFENSE

82.     Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or damage claimed under the Policy pre-existed the alleged date of loss and/or did not occur within the applicable Policy period of April 24, 2017 through April 24, 2018.

## THIRTEENTH DEFENSE

83.     The Policy provides in relevant part:

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

***

f.  Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

***

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative

21

humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

\*\*\*

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

\*\*\*

84.     Plaintiff's claims are barred, in whole or in part, by the above Policy exclusions, regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage.

## FOURTEENTH DEFENSE

85.     Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff and/or its agents' acts or omissions proximately caused or contributed to Plaintiff's damages.  Plaintiff's claims are further barred to the extent Plaintiff failed to mitigate its claimed damage.

## FIFTEENTH DEFENSE

86.     Plaintiff's claims are further barred by Plaintiff's failure to allocate its alleged damages between losses caused by a covered cause of loss and those limited by a Policy sublimit, caused by non-covered losses such as damages which occurred prior to the inception of the Policy and/or damages which were caused by excluded causes of loss under the Policy.

## SIXTEENTH DEFENSE

87.     Plaintiff's claims for alleged bad faith and violations of the Texas Insurance Code are barred to the extent Plaintiff did not sustain damages (if any) independent of the denial of benefits under the Policy.

## SEVENTEENTH DEFENSE

88.     The Time Element section of the Policy excludes coverage for remote loss, including "any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order," or "any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature."  The Policy further excludes coverage for "indirect, remote, or consequential loss or damage."  Any claims for such loss or damage are barred by the Policy exclusions.

## EIGHTEENTH DEFENSE

89.     The Policy excludes coverage for "delay, loss of market or loss of use."  Therefore, any claims for delay, loss of market or loss of use are barred by that exclusion.

## NINETEENTH DEFENSE

90.     Plaintiff's claims are barred, in whole or in part, to the extent the alleged damage reportedly suffered by Plaintiff has not been properly supported as required by the Policy.

## TWENTIETH DEFENSE

91.     Plaintiff's claims are barred in whole or in part to the extent that Plaintiff has already been compensated for its alleged loss.

## TWENTY-FIRST DEFENSE

92.     Coverage for time element losses is not provided if the loss can be made up within a reasonable period of time.

## TWENTY-SECOND DEFENSE

93.     Coverage, if any, for time element losses is limited as set forth in the Period of Interruption provision set forth in Section V – TIME ELEMENT COVERAGE GROSS EARNINGS of the Policy, which provides in relevant part:

6430070.1

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period of time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

    a.        normal operations resume, or

    b.        physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less.  Such period of time shall not be cut short by the expiration or early termination date of the Policy

***

The Period of Interruption does not include any additional time:

1.  Required for restaffing or retraining employees, or

2. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a through B.2.c, inclusive, above, or

3.  Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

94.     Time element losses are not available during any period in which business operations would have not been maintained for any reason other than physical loss or damage from a covered loss to which coverage under the Lexington Policy applies.

<b>TWENTY-THIRD DEFENSE</b>

95.     Plaintiff has failed to submit any details of its time element claim.  Defendant Lexington reserves its right to raise additional defenses.

<b>TWENTY-FOURTH DEFENSE</b>

96.     Plaintiff's claims are barred, in whole or in part, by Defendant Lexington's prior payments to Plaintiff under the Policy.

24

## TWENTY-FIFTH DEFENSE

97.     Plaintiff's claims are subject to the valuation provision in the Policy which provides that property that is not repaired or replaced within two years after the date of loss will be valued at Actual Cash Value at the time and place of the loss.  Specifically, Plaintiff's claims are subject to the following limitation in the Policy:

## SECTION IV - VALUATION

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A.      For all property other than property specifically described in Subparagraph B. through M., inclusive below: Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

***

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

98.     To the extent Plaintiff does not repair or replace its allegedly damaged property within two years after the loss or damage, Plaintiff's recovery, if any, is limited to the Actual Cash Value of the allegedly damaged property.

6430070.1

## TWENTY-SIXTH DEFENSE

99.     Plaintiff's claims are subject to the Demolition and Increased Cost of Construction

Provision of the Policy. Specifically, Plaintiff's claims are subject to the following limitation in

the Policy:

***

C.     DEMOLITION AND INCREASED COST OF CONSTRUCTION:
In the event of direct physical loss or damage covered under this
Policy that results in the enforcement of any law, ordinance,
governmental directive or standard in effect at the time of loss or
damage regulating the construction, repair or use and occupancy of
the property, the Company shall pay:

1.     Under Demolition Coverage A: For the loss in value of the
undamaged portion of the building as a consequence of
enforcement of an ordinance or law that requires demolition
of undamaged parts of the same building;

2.     Under Demolition Coverage B: For the costs to demolish
and clear the site of undamaged parts of the same building,
as a consequence of enforcement of an ordinance of law that
requires demolition of such undamaged property;

3.     Under Demolition Coverage C: For the increased cost of
repair or replacement of the damaged building and
undamaged part of the same building, limited to the cost that
would have been incurred in order to comply with the
minimum requirements of such law or ordinance regulating
the repair or replacement of the damaged building. However,
this Company shall not be liable for any such increased cost
of construction unless the damaged building is actually
rebuilt or replaced;

***

100.     To the extent Plaintiff is seeking recovery for "code upgrades," such costs are not

recoverable because there is no evidence of enforcement of any law or ordinance in effect at the

time of loss or damage, which resulted from direct physical loss or damage covered under the

Policy and Plaintiff has not provided any evidence of any costs incurred for "code upgrades."

6430070.1

## TWENTY-SEVENTH DEFENSE

101.    A bona fide controversy exists concerning the extent of Plaintiff's entitlement to benefits under the Policy. Defendant Lexington and its employees, agents, representatives, and adjusters are entitled to value claims differently from Lexington's policyholders without facing bad faith or extra-contractual liability.   Defendant Lexington would show that a bona fide controversy exists regarding the scope of any alleged covered loss and/or whether and the extent to which any asserted loss was limited by the Flood sublimit contained in the Policy, which was paid to Plaintiff.

## TWENTY-EIGHTH DEFENSE

102.    The Conditions section of the Policy provides:

> N.    PROTECTION AND PRESERVATION OF PROPERTY:
>
> In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the **Policy Limit.**
>
> ***
>
> P.    REQUIREMENTS IN CASE OF LOSS: The Insured shall:
>
> ***
>
> 3.    Protect the property from further loss or damage,
>
> 4.    Separate the damaged and undamaged personal property,
>
> 5.    Maintain such property in the best possible order, and
>
> 6.    Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail

27

> quantities, costs, actual cash value and amount of loss claimed,

> 7. Furnish all other documents or insurance policies that the Company may reasonable require,

> 8. Allow the Company to access and inspect any of the damaged or undamaged property, and

***

103. Plaintiff failed to preserve its property, protect the property from further loss, separate the damaged and undamaged personal property, maintain its property in the best possible order, furnish a complete inventory of the lost, destroyed, damaged and undamaged property, produce documents reasonably requested by Defendant Lexington and allow Defendant Lexington to access and inspect the damaged and undamaged property.  As such, Plaintiff failed to comply with the Conditions section of the Policy and its claim is barred.

<strong>TWENTY-NINTH DEFENSE</strong>

104. Plaintiff's claims are barred, in whole or in part, to the extent there has not been full compliance with all of the terms of the Policy issued by Lexington.

<strong>THIRTIETH DEFENSE</strong>

105. SECTION VII – CONDITIONS of the Policy provides in relevant part:

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy.  Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

28

106.    Any payment for loss or damage under the Policy is subject to any certificates of insurance on file with Defendant Lexington which require payment to a loss payee or mortgagee.

### THIRTY-FIRST DEFENSE

107.    This action is barred, in whole or in part, because the Amended Complaint fails to state a claim upon which relief can be granted.

### THIRTY-SECOND DEFENSE

108.    Defendant Lexington reserves the right to assert additional defenses with respect to such losses or damages.

### JURY DEMAND

109.    Defendant Lexington demands trial by jury as to all matters in this case.

### PRAYER

Defendant Lexington prays that (i) Plaintiff's claim for relief be denied in its entirety, (ii) Plaintiff take nothing by its claims, and (iii) Defendant be granted such other and further relief to which the Court may find it is justly entitled.

Respectfully submitted,

By: */s/ Brett A. Wallingford*
    Brett A. Wallingford – LEAD ATTORNEY
    Texas Bar No. 00797618
    bwallingford@zelle.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, TX  75202-3975
Telephone:        214-742-3000
Facsimile:        214-760-8994

**ATTORNEYS FOR DEFENDANT
LEXINGTON INSURANCE COMPANY**

6430070.1

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on all counsel of record on January 30, 2020, in accordance with the FEDERAL RULES OF CIVIL PROCEDURE, as follows:

Joseph E. Ackels, Sr.
State Bar No. 00829980
**ACKELS & ACKELS, L.L.P.**
3030 LBJ Freeway, Suite 1550
Dallas, TX  75234
Telephone:      214-267-8600
Facsimile:      214-267-8605
joe@ackelslaw.com

**ATTORNEY FOR PLAINTIFF**

4811-4156-9433v1

Sheryl Kao
State Bar No. 24036874
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
214-420-5500
214-420-5501 (fax)
kao@mdjwlaw.com
Christopher W. Martin
State Bar No. 13057620
**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**
Niels Esperson Building
808 Travis, 20th Floor
Houston, TX 77002
Telephone: 713-632-1701
Facsimile: 713-222-0101
martin@mdjwlaw.com

**ATTORNEYS FOR DEFENDANT WILLIS TOWERS WATSON US LLC**

*/s/ Brett A. Wallingford*
Brett A. Wallingford

6430070.1